T.C. Summary Opinion 2011-46

UNITED STATES TAX COURT

BETTY L. KLEBANOFF, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9585-10S.               Filed April 7, 2011.

<u>William J. Curosh</u>, for petitioner.

<u>Chris J. Sheldon</u>, for respondent.

GERBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

------

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined an $18,279 deficiency in petitioner's 2007 Federal income tax and a $3,656 accuracy-related penalty under section 6662(a). Petitioner received $51,000 in payments during 2007 which she did not report on her 2007 income tax return. She agrees that she received the $51,000 but contends that it was a draw against future profits and not taxable. In the alternative, if the $51,000 is considered taxable, petitioner argues that she received it as an employee and that it is not subject to self-employment tax. Accordingly, the questions we consider are whether the $51,000 was a draw or a guaranteed payment, and if a guaranteed payment, whether it was subject to self-employment tax. If the payment is taxable, we must also consider whether petitioner is subject to the accuracy-related penalty.

### Background

Petitioner resided in Arizona at the time her petition was filed. Mirus Development (Mirus) was an Arizona limited liability company (LLC) with Rock Solid Ventures, LLC (Rock), and the Hospice House, LLC (Hospice), as its only manager/members. During 2007 Rock's members were Frederico Buck and Keith A. Colson (Rock Group), and Hospice's members (Hospice Group) were petitioner and Christine A. Boehler (Ms. Boehler).

Mirus was treated as a partnership for Federal income tax purposes and reported on a calendar year basis. Petitioner held a 25-percent interest in Mirus through her 50-percent interest in Hospice. After filing her 2007 income tax return, petitioner received a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., from Mirus that reflected a $51,000 guaranteed payment to petitioner. Petitioner received the $51,000 from Mirus during 2007 and admits that she did not report that amount on her 2007 income tax return, which was filed on or about April 15, 2008.

Petitioner and Ms. Boehler are registered nurses specializing in hospice care. Mr. Buck and Mr. Colson were in the real estate development business and were interested in developing and building hospice in-patient units. Petitioner and Ms. Boehler met with Messrs. Buck and Colson and agreed to combine their expertise to develop, run, and sell hospice in-patient units. They merged their expertise by forming the LLCs Hospice and Rock.

Petitioner and Ms. Boehler were without capital or a source of income, and initial discussions focused upon a flow of payments to Hospice Group during the developmental stages of the project. An understanding was reached whereby petitioner and Ms. Boehler would receive payments during development of the project and the amounts received would reduce their shares of any profit

that resulted from the sale of the units.  As a result of the negotiations, Mirus was formed with Hospice and Rock as equal members and the four individuals with equal shares in Mirus, essentially as partners through their LLCs.

Petitioner and Ms. Boehler were involved in the venture with Messrs. Buck and Colson, and during 2007 petitioner and Ms. Boehler each received $51,000 pursuant to the understanding reached by the parties.  An operating agreement for Mirus was not finally executed by the parties.  Under the drafts of an operating agreement, petitioner and Ms. Boehler were to receive "an advance on distributions * * * [against their share of future profits of Mirus] equal to Seventeen Thousand Dollars ($17,000.00) (the 'Monthly Draw')."  Petitioner and Ms. Boehler understood from the discussions and drafts of operating agreements that the payments received (they split six $17,000 monthly payments, thereby receiving $51,000 each during 2007) were draws against any future profits of Mirus.

In the preliminary discussions and after Mirus was operational, the monthly amounts petitioner was receiving were referred to as "draws".  Petitioner did not receive a Form 1099-DIV, Dividends and Distributions, or Schedule K-1 from Mirus until after her 2007 return was due and filed.  At the time that petitioner was attempting to prepare her 2007 tax return, she

tried to contact Mirus and Messrs. Buck and Colson but received no response.

When it was time to file her 2007 tax return, petitioner decided to file the return without reporting the $51,000, because of the confusion created by the lack of information from Mirus and the understanding that an amended tax return could be filed when the confusion was resolved. Petitioner's 2007 Federal income tax return was filed on or about April 15, 2008. Similarly, Ms. Boehler did not include her $51,000 on her 2007 tax return, taking the position that it was a draw or advance against future profits from the project. A 2007 Form 1065, U.S. Return of Partnership Income, was filed by Messrs. Buck and Colson for Mirus on or after September 30, 2008. That partnership return reflected that petitioner was a 25-percent partner and that the $51,000 payment she received was a "guaranteed payment" subject to self-employment tax. Subsequently, petitioner consulted with a tax professional, and an amended partnership return was prepared for Mirus, showing Hospice and Rock as its partners rather than the four individuals. At the time petitioner filed her 2007 tax return, the relationship with Messrs. Buck and Colson was strained, and there was a lack of communication. It was petitioner's position that she was not a partner in Mirus and that Hospice was. Subsequently, petitioner filed an amended 2007 Form 1065 for

Mirus reflecting Hospice as a partner instead of petitioner and Ms. Boehler.

Hospice Group asked but was not permitted to see the detailed financial information for Mirus.  At some point during 2007 things began to unravel in Hospice Group's relationship with Rock Group.  Rock Group offered Hospice Group a reduced percentage of the enterprise (15 percent) coupled with the elimination of their monthly payments.  Petitioner was unable to proceed without the monthly payments, and she and Ms. Boehler hired an attorney to represent their interests in the "parting of ways" or dissolution of the Mirus enterprise.  By the end of 2007 the Mirus venture was without substance, and operations ceased.  In early 2008 Hospice Group's attorney began negotiations with Rock Group and, ultimately, their relationship with Hospice Group was formally ended.  The Mirus venture was not continued by Messrs. Buck and Colson, and it ceased operations during 2008.

## Discussion

The parties' controversy over the $51,000 in payments petitioner received is focused upon the question of the nature of the payments.  Petitioner contends that the payments were draws against her LLC's percentage of future sales of hospice care units.  Respondent contends that the payments were guaranteed payments directly from Mirus to petitioner.  The major

differences between the two positions concern the type and amount of tax that would result.

Generally, payments received by a partner from a partnership that are determined without regard to the income of the partnership are classified as guaranteed payments under section 707(c) and are taxable as ordinary income under section 61(a). Payments received by a partner that are determined with regard to partnership income and/or are in the nature of current or liquidating distributions may be taxable as capital gain to the extent that they exceed a partner's basis in the partnership. See sec. 731(a). Additionally, advances against distributive shares are treated as current distributions at the end of the year pursuant to section 1.731-1(a)(1)(ii), Income Tax Regs. Other differences are that payments made to a partner for services which are determined without regard to partnership income may be deductible by the partnership provided they otherwise satisfy the tests of section 162 and that such payments may be subject to Social Security or self-employment tax.

The record supports our holding that the $51,000 in payments to petitioner was a draw against future earnings of the partnerships. Petitioner and Ms. Boehler brought their hospice care expertise to a business venture with two other individuals who were real estate entrepreneurs. The business venture was cast in an LLC (Mirus), and petitioner and Ms. Boehler formed

Hospice, a separate LLC, to be a 50-percent partner in Mirus. Messrs. Buck and Colson brought their real estate expertise and capital to the venture. Their 50-percent interest in Mirus was held through Rock, a separate LLC.

Negotiations resulted in an understanding that petitioner and Ms. Boehler would receive advances against future distributions of profits. The plan was to develop and sell five hospice care units, and the partners would be entitled to their percentages of the profits through their LLCs. Messrs. Buck and Colson had bases in their partnership interests, and petitioner and Ms. Boehler did not. It was therefore anticipated that the amounts petitioner received were against her share, if any, of the profits from the sale of hospice units. The $51,000 in payments was not paid from profits, and it was not based on her performance of duties.

Ultimately, the venture did not succeed, no income or profits materialized, and Mirus, Rock, and Hospice were, for all practical purposes, abandoned by the end of 2007. These circumstances resulted in petitioner's receipt of payments totaling $51,000 during 2007 which were intended as draws against future sales of hospice units but, in effect, resulted in liquidation of her partnership interest. Section 731 governs these circumstances. Under section 731(a), in the case of the payment of: "a distribution by a partnership to a partner--(1)

gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution". Because petitioner had no basis in her partnership interest, the $51,000 is taxable as capital gain to petitioner and is not subject to self-employment tax. See secs. 731, 1402.[2]

Finally, we consider whether petitioner is liable for a section 6662(a) accuracy-related penalty for negligence or disregard of rules or regulations and/or a substantial understatement of income tax under section 6662(b)(1) and (2) for 2007. A taxpayer may be liable for a 20-percent penalty on any underpayment of tax attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). "Negligence" is any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" means any careless, reckless, or intentional disregard. Sec. 6662(c).

---

[2]Ultimately, it is irrelevant whether Hospice and Rock or petitioner and the other venturers were the partners of Mirus. The entire conglomeration of entities and the operation of the venture was without vitality or substance and ceased to operate as of the end of 2007. The parties, during 2008, attempted to settle their interests, but no further activity directed toward developing and selling hospice units occurred after 2007. Because of our holding that the $51,000 was a draw and resulted in capital gain, it is unnecessary to consider petitioner's alternative argument.

An underpayment is not attributable to negligence or disregard to the extent that the taxpayer shows that the underpayment is due to reasonable cause or good faith. <u>Neonatology Associates, P.A. v. Commissioner</u>, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also secs. 1.6662-3(a), 1.6664-4(a), Income Tax Regs. A substantial understatement of income tax is an understatement that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

Petitioner was aware that she received $51,000 in payments from Mirus during 2007. She did not understand the legal or technical ramifications of those payments. She made attempts to contact Mirus and Messrs. Buck and Colson, but she did not receive any response regarding the $51,000 in payments. Petitioner did not receive any notification from Mirus before her 2007 income tax return was due and was filed. At the time her 2007 income tax return was due and being filed in 2008, petitioner's lawyer was engaged in negotiations in an attempt to work out some settlement of her interest in Mirus. There was uncertainty about whether petitioner would receive additional amounts from Mirus and/or Messrs. Buck and Colson and as to the nature of the payments already received. Petitioner decided to wait and file an amended return for 2007 after she was able to better address the taxability of the $51,000 in payments.

The events that culminated in the filing of the first Mirus partnership return and petitioner's income tax return were followed in relatively short order by respondent's audit of petitioner's return and the issuance of a notice of deficiency. Petitioner consulted tax professionals who advised her and caused her to file an amended partnership return for Mirus reflecting that the $51,000 in payment was a draw and that Hospice and Rock were the partners of Mirus.

It was therefore reasonable for petitioner to take the position that the $51,000 was not taxable in her 2007 tax year. Under those circumstances, petitioner's actions were reasonable and she is not liable for an accuracy-related penalty.

To reflect the foregoing,

Decision will be entered under Rule 155.